UNITED STATES DISTRCIT COURT

DISTRICT OF MASSACHUSETTS

Case No: 26-CV-11352

| | |
|---|---|
| The United States of America, | ) |
| Plaintiff | ) |
| V. | ) |
| President and Fellows of Harvard | ) |
| College, | ) |
| Defendants. | ) |

## Motion For Leave To File Brief Amici Curiae In Support of The Plaintiff's Legal Action Against the Defendant

1

## TABLE OF AUTHORITIES

Hannah Arendt, The Origins of Totalitarianism (Harvest Books, 1973)............................9

Alexis de Tocqueville, Democracy in America (Penguin, 1951).....................................9

Salman Rushdie, Joseph Anton, A Memoir (Random House, 2012)............................. 5

George Orwell, 1984 (Penguin, 1949)...............................................................9

John Tramphour, editor, How Harvard Rules (South End Press, 1989)............................9

*About,* Harvard Kennedy School........................................................................9

Civil Rights Law, U.S. Department of Education.......................................................12

**The New York Times v. Sullivan,** 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d. 686
(1964)................................................................................................12

**Gertz v. Robert Welch, Inc.,** 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d. 789
(1974)................................................................................................12

INTRODUCTION

The Petitioner is a former research scholar at Harvard who was subjected to a retaliatory false arrest and incarceration by Harvard Police immediately after he blew the whistle on the university's financial ties with a foundation that had placed a reward on the head of the author, Salman Rushdie. As a victim of gross rights abuse at Harvard University, the Petitioner has endured years of continuing unlawful mistreatment by the University, which to this date has refused to admit its egregious error of violating the civil rights of one its researchers and, instead, has used all its power to oppress and marginalize the Petitioner. The Petitioner states that unfortunately Harvard University's dereliction of duty is not limited to an inexcusable neglect in combatting antisemitism and, in fact, extends to non-Jewish individuals such as this Petitioner, who has appealed to the Civil Rights Division of the Department of Justice indirectly through the former US Secretary of State/Massachusetts Senator, Mr. Joh Kerry, who in his letter to DOJ has stated that his office had determined that the Petitioner's complaint against Harvard "has merits."

Sadly, Harvard enjoys a great deal of legal immunity as a result of its considerable influence, thus depriving this Petitioner of a token of justice despite a concerted effort to seek justice vis-à-vis Harvard's flagrant abuses of his civil, constitutional, and human rights with impunity. The Petitioner implores the Honorable Court to disallow the continuation of this unhealthy state of affairs that is anathema to US Constitution and the rule of law. Harvard's de facto legal immunity is an affront to the principles of American democracy and reflects an absolutist institution that, in the Petitioner's case, has resorted to cruel repression, irrespective of the fact that the Petitioner was exonerated of any wrongdoing and all the (fictitious) charges against him were dropped and, moreover, he is widely published by various Harvard publications.

3

Irrespective, the Harvard administration, in retaliation against the Petitioner's civil rights law suit against the University, has banned him from Harvard and all its property by issuing a no-trespass order against the Petitioner on the day the charges against him were dismissed in court, this instead of issuing a formal apology and addressing the extensive damages to the Petitioner's career as a result of the false arrest and incarceration, reminiscent of a third world dictatorship and, for sure, in direct contradiction to Harvard's self-image as a liberal 'beacon on the hill'. The Petitioner's experience clearly shows that whistleblowers have no rights at Harvard and are candidates for outright repression by the capable hands of the University's army of campus police and their detective units. The present action provides, however, an excellent venue to address this matter for the simple fact that the University's obligation with respect to the protection of civil rights of members of the Harvard community is seriously lacking and is in dire need of legal scrutiny.

### Identity and Interest of Amici Curiae

The Petitioner is a resident of Massachusetts since 1973, graduate of Thayer Academy, class of 198, University of Massachusetts, BA in political science, class of 1980, and Boston University, Ph.D. in political science, class of 1988. The Petitioner has also done graduate studies in comparative theology at Andover-Newton Theological School, thesis pending, and is the author of a book chapter on religion and ecology published by Harvard University Press,[1] as well as a seminal article in Harvard Theological Review.[2] Petitioner has a long track record in promoting inter-faith dialogue, by founding an NGO, Global Inerfaith Peace, and has strongly condemned the Hamas atrocities of October 7th, e.g., in an article in USA TODAY. Petitioner has

---

[1] https://www.betterworldbooks.com/product/detail/islam-and-ecology-a-bestowed-trust-9780945454397.
[2] https://www.jstor.org/stable/1509790?seq=1.

done post-doctoral studies at Harvard, UC Berkeley, and Binghamton University, and has also taught at a number of Boston-area universities, including Framingham State University, Northeastern University, Bentley University, and University of Massachusetts in Boston. The Petitioner was affiliated with Harvard as a researcher in 1989-1991 and against in 2006, the former at Center for Middle East Studies and the latter at the Kennedy School's Belfer Center, Managing the Atom Project. The Petitioner is also the author of more than 35 books, both scholarly and non-scholarly, many of which are carried by various libraries at Harvard, per library catalogue research, including a philosophical book on the US President, John Quincy Adams.[3] Petitioner has authored several articles, e.g., oped articles in Boston Globe, with a number of other researchers at Harvard, reflected on the Belfer's website. Yet, despite his serious intellectual and academic contributions to Harvard above-mentioned, and the fact that the bogus criminal charges brought against him by Harvard police to silence him were completely dismissed in court, the Petitioner is still confronted with an illegal no-trespass order and other instances of both direct and indirect mistreatment by the Harvard administration and its rogue police department, necessitating legal scrutiny by this Court. Hence, the Petitioner has a vested and direct interest in the resolution of this action, which impinges on not only the Jewish population of the Harvard community but also any one else whose rights have been trampled upon by the University.

To elaborate, a brief chronology of the Petitioner's rights abuse by the Harvard administration is as follows:

---

[3] https://www.amazon.com/Quincy-Origins-Critical-Thought-America/dp/B0B8R37GS6.

(a) Retaliatory false arrest and 9-day incarceration in the hands of Harvard Police[4] immediately after the Petitioner blew the whistle on his research center's amoral ties to the opponents of author Rushdie, who in his autobiography, Joseph Anton, has recounted the Petitioner's efforts to remove the death threat of a *fatwa* against him, together with the late CBS's correspondence, Mr. Mike Wallace, who testified in court as the Petitioner's character witness.[5] Thus, within days of Petitioner's complaint to the Ethics Committee of Middle East Studies Association, he found himself subjected to a pre-dawn invasion of his home in Newton, Massachusetts, by several Harvard Police officers pursuant to a dubious arrest warrant they had procured via a fictitious crime story – of death threats and extortions of money from the director of the Middle East Center. All these charges were dismissed without the imposition of any penalty on the Petitioner.[6]

(b) Extensive damages to the Petitioner's reputation, career, as a result of the false arrest above-mentioned, including the loss of his teaching position.

(c) Harvard's reversal of its consent to a federal judge's proposed settlement, consisting of $300,000.00 and a two-year fellowship at Harvard for the Petitioner, in the case of Afrasiabi v. Harvard, US District Court for Massachusetts, 96-12200 EFH.[7]

(d) Judge Michael Harrington's unreasonable decision to exclude the finding to two hand-writing experts matching the handwriting of a Harvard detective on trial with the purported extortionist, this a day after going on record and stating that the expert's finding

---

[4] https://www.thecrimson.com/article/1996/2/8/former-post-doc-will-stand-trial-pa/.

[5] https://www.youtube.com/watch?v=HL21nDnuqpY. Wallace has also written a blurb for the Petitioner's book, Looking For Rights At Harvard: https://www.amazon.com/Looking-Rights-Harvard-Kaveh-Afrasiabi/dp/1439268835.

[6] https://www.thecrimson.com/article/1996/4/19/da-drops-extortion-charges-against-former/.

[7] Several academic supporters of the Petitioner including Professor John Ambacher were present in court when Harvard attorneys consented to Judge Harrington's proposed settlement. Yet, a month later, Harvard asked to re-open a closed case solely to deny a token of justice to the Petitioner.

was "so critical, it can win the case." Clearly, the Petitioner was not to be afforded the content of American justice, only its veneer.

(e) The finding of office of Mr. John Kerry that the Petitioner's complaint of rights abuse by Harvard "has merits" and deserves further scrutiny and investigation by the DOJ;

(f) Harvard administration's interference in the affairs of the Belfer Center by forcing the exclusion of Petitioner immediately after the Petitioner's participation in a high-level panel on nuclear non-proliferation at Harvard Law School, reflected in Harvard Gazette.[8]

(g) Harvard's incessant targeting and abuse of the Petitioner's civil rights over the years, both directly above-mentioned, and indirectly through Harvard's deep tentacles in the academia, reflecting an absolutist leviathan that clamps down and criminalizes its voices of dissent, instead of showing tolerance. Petitioner has lodged formal complaints of human rights abuse by Harvard to UN Human Rights Council, American Political Science Association, Middle East Studies Association, Amnesty International, and Middle East Watch.

## (h) ARGUMENT

(i)

There is a glaring, and indisputable, discrepancy between the public image of Harvard, as the embodiment of cherished values of freedom, tolerance, non-discrimination, and democracy, and its mean, vicious, cruel, unlawful and inhuman mistreatment of the voices of dissent, particularly those who dare to blow the whistle on the university's unethical practices. The Petitioner's experience of horrific repression by Harvard is instructive on this paradox, stemming from the absolutist and totalitarian tendency that has

---

[8] https://news.harvard.edu/gazette/story/2006/03/irans-nuclear-ambitions/.

grown uncontrollably at Harvard as a direct result of its growing power and influence, resembling a 'papacy.' Various thinkers, ranging from De Tocqueville to Orwell to Arendt and others,[2] have alerted us on the perils of democracy and how the scourge of intolerance and authoritarianism can flourish even under democratic guises.[3] This malady at Harvard needs to be exposed and confronted, instead of being buried by the chorus of Harvard devotion by its vast army of loyalists, who are seemingly blind to the university's dark side, complained of by the Petitioner to various human rights organizations as well as courts in the United States, hitherto in vain due to the "Harvard mystique," that is, the assumption that Harvard can do no wrong and all its actions are proper and legitimate. If only that were true, and beneath the charming façade the devil of absolutism and cruel intolerance did not breathe. The mission statement of Harvard Kennedy School boasts of ensuring "people can live in societies that are more safe, free, just, and sustainably prosperous." But, in the Petitioner's case, the University has done the exact opposite, that is, it has made sure that the Petitioner was deprived of his liberty and freedom of speech, that he could not secure an employment as an educator, that he would repeatedly suffer in the proxy hands of Cambridge Police to inflict further punishment, that he would live in dire poverty and his plea for justice with the Harvard community falls on deaf ears. [4]

Indeed, what better example of Harvard's descent to the bosom of a repressive leviathan blind to the dictates of justice than its history of mistreating this Petitioner, who has remained steadfast on his quest for justice decades after decades, reminding one of Orwell's insight, "We are not interested in the good of others; we are interested solely in power, pure power." Thankfully, several luminaries, including the late Mike Wallace, filmmaker David Mamet, M.I.T. linguist Noam Chomsky, historian Howard Zinn, and former Boston University President John Silber (App. 5, recognized the heroic valor of this Petitioner standing up for the rights of a condemned author and facing dire consequences

8

from an institution that is supposedly a champion of freedom of speech and individual rights and liberties. The irony was fully captured by Mr. Wallace after his in-court testimony on the Petitioner's behalf when he told the Boston Globe: "I admire Dr. Afrasiabi. He has been wronged. The cannons of Harvard are lined up against a pee shooter. Afrasiabi is naïve enough to believe that he can prevail over the resources of Harvard." (App. 6). In retrospect, Wallace was right and the Petitioner was but a victim of his naivete in the American justice, that he can somehow enter the Kafkaesque 'castle' of American justice, i.e., a perpetual dream in vain.

Hence, the historical significance of President Trump's initiatives against Harvard, an old institution that has been derailed by its own power and influence, to the detriment of American democratic values. As a professor of American politics for many years, the Petitioner urges the Court not to be persuaded by the University's blind followers and their cult of Harvard-worship, but rather by the historical necessity of addressing the hitherto-neglected issue of how Harvard's vast power has corrupted it and let it astray from its professed mission of propagating *veritas*.

Indeed, Petitioner would have never suffered the indignity of a wrongful arrest and incarceration in Harvard's hands if Harvard had not been given de facto legal immunity, thus allowing such perverse illegal acts against the Petitioner, whose only sin was to criticize Harvard over his research Center's unethical cohort with the fundamentalist opponents of Mr. Rushdie. In fact, belatedly, this Petitioner commenced a criminal proceeding against Harvard in Cambridge Court, and a magistrate found it meritorious of a show cause hearing. The Petitioner's unlawful repression by Harvard illuminates the depth of sedimented totalitarian tendency at Harvard and the imperative of confronting it for the sake of cherished democratic values and principles. Harvard should not be allowed to silence and to crush its dissidents with impunity, and the University's whistleblowers such as the Petitioner should be able to count on legal protection, irrespective of Harvard's disproportionate influence on the judiciary above-mentioned.

9

## CONCLUSION

As a political scientist and author, who became a whistleblower at Harvard and who has been subjected to a gross violation of his human, civil, and constitutional rights by Harvard and its cronies, the Petitioner opposes the Plaintiff's Motion for Summary Judgment. There is irrefutable evidence of Harvard's unlawful and unconstitutional behavior vis-à-vis the Petitioner and the Petitioner prays the Court to permit this Brief, which counterbalances the one-sided and uncritical endorsement of Harvard, as a bastion of liberty, by a group of the Harvard supporters. The interest of justice dictates that all the truth about Harvard should be fully scrutinized, including the unsavory truths about the university's growing totalitarian tendency above-mentioned. Harvard will certainly be emboldened to continue and to recycle its unlawful and repressive behavior if it prevails in its Motion For Summary Judgment. Petitioner prays to proceed the case to trial and to consider witness testimony by the Petitioner on Harvard's systematic violation of his civil rights and the Civil Rights Laws, above all those protecting the freedom of speech.[5]

Petitioner demands justice.

Date: May 5, 2026

Respectfully Submitted,

Kaveh L. Afrasiabi, Ph.D., Pro Se

103 Indian Hill Road,

Carlisle, MA 01741

(617) 3199276

10

Certificate of Service: A true Copy of this Petition has been served on the US Department of Justice, civil rights division, on this date, May 5, 2026.